IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

PRISCILLA THOMPSON,                    )
                                       )
        Plaintiff,                     )        NO. 3:20-cv-00482
                                       )        JUDGE RICHARDSON
v.                                     )
                                       )
HENDRICKSON USA, LLC,                  )
                                       )
        Defendant.

## **MEMORANDUM OPINION**

Pending before the Court is Defendant's Motion to Dismiss.[1] (Doc. No. 13, "Motion").

Plaintiff has filed a response (Doc. No. 19). Defendant has filed a reply (Doc. No. 20). The matter

is ripe for review.

---

[1] Defendant does not specify a rule under which it brings its Motion. In the Motion, Defendant
states that it "respectfully requests that it be granted judgment on the pleadings or alternatively
that the Court dismiss Plaintiff's Complaint, with prejudice, for failure to state a claim or cause of
action upon which relief may properly be granted." (Doc. No. 13 at 2). Thus, though styled as a
Motion to Dismiss, the Motion appears effectively intended as a motion for partial judgment on
the pleadings, and in the alternative, a motion to dismiss in part.
        The Federal Rules of Civil Procedure provide that after the pleadings are closed, but within
such time as not to delay the trial, any party may move for judgment on the pleadings. Fed. R. Civ.
P. 12(c). "Rule 12(c) may be employed as a vehicle for raising several of the defenses enumerated
in Rule 12(b), including the defense of failure to state a claim upon which relief may be granted."
*Amersbach v. City of Cleveland*, 598 F.2d 1033, 1038 (6th Cir. 1979); *see also Thomason v.
Nachtrieb*, 888 F.2d 1202, 1204 (7th Cir. 1989) (citing *Amersbach*); *Becker v. Crounce Corp.*, 822
F. Supp. 386, 391 n. 4 (W.D. Ky. 1993) (citing *Amersbach*).
        In this case, the Complaint has been filed, but Defendant has not filed an Answer.
Therefore, the appropriate procedural vehicle for Defendant to bring its Motion is a Motion to
Dismiss under 12(b)(6), not a motion for judgment on the pleadings. As the Court discusses below,
although Rule 12(b)(6) is often not the appropriate vehicle to dismiss a claim based on the statute
of limitations (which Defendant is seeking to do in part of its Motion), this Motion was
appropriately brought under Rule 12(b)(6).

1

For the reasons discussed, the Court will deny Defendant's Motion.

## FACTUAL BACKGROUND[2]

Plaintiff, an African American woman, was hired by Defendant in September 2010 as an Assembly Worker. (Doc. No. 1 at ¶ 8). Defendant's Paint and Assembly Department contains several different jobs a worker can perform, but workers often consistently perform only one job within the department at a time. (*Id.* at ¶¶ 9, 10). For several years prior to 2015, Plaintiff worked only one station on the assembly line. (*Id.* at ¶ 11). In July 2015, Plaintiff suffered a work-related injury in the form of a rotator cuff tear. (*Id.* at ¶ 13). Plaintiff required surgery, follow-up treatment, physical therapy, and work conditioning as a result of her injury. (*Id.* at ¶ 14).

Plaintiff received notes from her doctor reducing her work restrictions as she healed, but each time she reached out to Defendant, it denied her request to return to work. (*Id.* at ¶¶ 17, 18). Defendant refused to allow Plaintiff to return to work in a light duty role, and Defendant did not

---

However, the Court notes that it would apply the same legal analysis regardless of the caption of the Motion. When a 12(b) defense is raised via a motion for judgment on the pleadings, the district court evaluates the motion using the same standard applied to a motion to dismiss for failure to state a claim under Rule 12(b)(6). *See Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 437 n.1 (6th Cir. 1988); *Becker*, 822 F. Supp. at 391 n.4 (W.D. Ky. 1993) (citing *Amersbach*); *Kinney v. Mohr*, No. 2:13-cv-1229, 2017 WL 1395623, *4 (S.D. Ohio Apr. 19, 2017) (citing *Amersbach*); *Clemons v. Metro. Gov't of Nashville & Davidson Cty., Tenn.*, No. 3-14-1690, 2015 WL 4717398, at *1 (M.D. Tenn. Aug. 7, 2015). "Thus, the same rules which apply to judging the sufficiency of the pleadings apply to a Rule 12(c) motion as to a motion filed under Rule 12(b)(6)[.]" *Lacy v. Ohio Dept. of Job and Family Servs.*, No. 2:16-cv-912, 2017 WL 1397522, *1 (S.D. Ohio Apr. 19, 2017) (citing *Amersbach*). Indeed, when a Rule 12(c) motion is based on an asserted failure to state a claim upon which relief can be granted, "[t]he only difference between Rule 12(c) and Rule 12(b)(6) is the timing of the motion to dismiss." *Ruppe v. Knox Cty. Bd. Of Educ.*, 993 F. Supp. 2d 807, 809 (E.D. Tenn. 2014) (quoting *Hunter v. Ohio Veterans Home*, 272 F. Supp. 692, 694 (N.D. Ohio 2003)).

[2] The facts in this section are taken from the Complaint (Doc. No. 1) and are taken as true for the purposes of this Motion. Likewise, at times during its analysis, the Court refers to alleged facts—such as what Plaintiff was requesting of Defendant—without adding the qualifier that they are merely *alleged* facts. The Court does so for ease of discussion, and not to imply any belief as to whether such alleged facts are the actual facts.

2

engage in an interactive process to determine whether the accommodation of a light duty role could be granted. (*Id.* at ¶ 16).

In June 2017, Plaintiff's doctor notified Defendant that Plaintiff's restrictions would be permanent. (*Id.* at ¶ 21). That month, Plaintiff had a meeting with Defendant's Human Resources Manager and offered to do several jobs in the Paint and Assembly Department that she believed she could fully perform, including among others the brake installation position. (*Id.* at ¶ 22). Defendant maintained that Plaintiff must be able to perform all jobs in the Paint and Assembly Department in order to return to work. (*Id.* at ¶ 23). Plaintiff was terminated the day after her meeting with the Human Resources Manager. (*Id.* at ¶ 28).

At the time of her termination, there were several other employees who were not required to rotate positions and were not able to perform all positions in the department. (*Id.* at ¶ 29). Plaintiff believes that at least one white employee was allowed to return to work with light duty restrictions in the Paint and Assembly Department. (*Id.* at ¶ 25). Plaintiff believes that white employees without a disability were allowed to stay in one position and not rotate throughout the department. (*Id.* at ¶¶ 26, 27).

Plaintiff filed a Charge of Discrimination with the EEOC on December 17, 2017, alleging discrimination and retaliation based on disability. (*Id.* at ¶ 30). She subsequently amended her charge to allege discrimination and retaliation based on racial discrimination. (*Id.* at ¶ 31). In connection with her EEOC charge, a federal investigator performed a site visit at the facility, where the investigator observed that several employees did not ever rotate positions and had not been cross-trained to rotate to other positions. (*Id.* at ¶¶ 32, 33, 34).

On December 12, 2019, the EEOC issued a determination letter finding that there is reasonable cause to believe that Respondent failed to provide a reasonable accommodation as to

Plaintiff's disability. (*Id.* at ¶ 35). The EEOC issued a Notice of Right to Sue based on both disability discrimination and race discrimination, and Plaintiff commenced her action in this Court on June 9, 2020, within 90 days of receipt of the EEOC's Notice of Right to Sue. (*Id.* at ¶¶ 7, 36).

In her Complaint, Plaintiff brings the following respective Counts: I) Violation of the Americans with Disabilities Act Amendments Act ("ADAAA")[3] in the form of disability discrimination and retaliation, II) race discrimination under Title VII, and III) race discrimination and retaliation under 42 U.S.C. § 1981 ("Section 1981"). Plaintiff seeks relief in the form of monetary damages. It is relevant to the discussion below to note that although it is generally customary to include only a single "claim" in each count of a complaint, Plaintiff's Counts I and III each can be viewed as including two counts, one for discrimination and one for retaliation.

## LEGAL STANDARD[4]

For purposes of a motion to dismiss brought under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must take all the factual allegations in the complaint as true, as it has done above. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is

---

[3] The ADAAA was enacted (effective January 1, 2009) to make amendments to the Americans with Disabilities Act (ADA) to, among other things, ensure "a broad scope of protection to be available under the ADA." *See Taylor v. Specialty Rest. Corp.*, No. 2:12-cv-44, 2014 WL 4922942, at *4 (S.D. Ohio Sept. 30, 2014) (quoting ADAAA).

[4] The statute of limitations is an affirmative defense. Fed. R. Civ. P. 8(c). A plaintiff does not need to plead the lack of an affirmative defense to state a valid claim. *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012). "For this reason, a motion under Rule 12(b)(6), which considers only the allegations in the complaint, is generally an inappropriate vehicle for dismissing a claim based upon the statute of limitations. But, sometimes the allegations in the complaint affirmatively show that the claim is time-barred. When that is the case . . . dismissing the claim under Rule 12(b)(6) is appropriate." *Id.*; *see also Alsbrook v. Concorde Career Colleges, Inc.*, 469 F. Supp. 3d 805, 823 (W.D. Tenn. 2020). Defendant is claiming that the Complaint and the documents referenced in the Complaint affirmatively show that some of the claims (Counts II and III) are time-barred. Therefore, it is appropriate to consider these arguments on a Rule 12(b)(6) motion.

4

plausible on its face. *Id.* A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id.* When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Id.* at 1950. A legal conclusion, including one couched as a factual allegation, need not be accepted as true on a motion to dismiss, nor are mere recitations of the elements of a cause of action sufficient. *Id.*; *Fritz v. Charter Township of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010), cited in *Abriq v. Hall*, 295 F. Supp. 3d 874, 877 (M.D. Tenn. 2018). Moreover, factual allegations that are merely consistent with the defendant's liability do not satisfy the claimant's burden, as mere consistency does not establish plausibility of entitlement to relief even if it supports the possibility of relief. *Iqbal*, 556 U.S. at 678.

In determining whether a complaint is sufficient under the standards of *Iqbal* and its predecessor and complementary case, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), it may be appropriate to "begin [the] analysis by identifying the allegations in the complaint that are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 680. This can be crucial, as no such allegations count toward the plaintiff's goal of reaching plausibility of relief. To reiterate, such allegations include "bare assertions," formulaic recitation of the elements, and "conclusory" or "bald" allegations. *Id.* at 681. The question is whether the remaining allegations—factual allegations, *i.e.*, allegations of factual matter—plausibly suggest an entitlement to relief. *Id.* If not, the pleading fails to meet the standard of Fed. R. Civ. P. 8 and thus must be dismissed pursuant to Rule 12(b)(6). *Id.* at 683.

5

As a general rule, matters outside the pleadings may not be considered in ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6) unless the motion is converted to one for summary judgment under Rule 56. Fed. R. Civ. P. 12(d). When a document is referred to in the pleadings and is integral to the claims, it may be considered without converting a motion to dismiss into one for summary judgment. *Doe v. Ohio State Univ.*, 219 F. Supp. 3d 645, 652-53 (S.D. Ohio 2016); *Blanch v. Trans Union, LLC*, 333 F. Supp. 3d 789, 791-92 (M.D. Tenn. 2018).

Importantly, the familiar burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973), holding modified by *Hazen Paper Co. v. Biggins*, 507 U.S. 604 (1993), is inapplicable on a Rule 12(b)(6) motion to dismiss.[5]

A plaintiff need not allege facts specifically indicating that the plaintiff could carry the burden she might ultimately bear under *McDonnell Douglas*. This is because *McDonnell Douglas* "is an evidentiary standard, not a pleading requirement." *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 510 (2002). A plaintiff is not required to plead what would qualify as a prima facie case for

---

[5] The Sixth Circuit has summarized the applicability and workings of the *McDonnell Douglas* framework as follows:

> A plaintiff may show discrimination by direct evidence, or a plaintiff lacking direct evidence of discrimination may succeed on a Title VII claim by presenting indirect evidence under the framework first set forth in *McDonnell Douglas Corp v. Green*, 411 U.S. 792, 802–03, 93 S. Ct. 1817, 36 L.Ed.2d 668 (1973).
>
> To succeed under the *McDonnell Douglas* framework, the plaintiff must first make out a prima facie case of discrimination by a preponderance of the evidence. . . . Once the plaintiff makes out a prima facie case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for" the adverse employment action. Should the defendant do so, the plaintiff then must prove by a preponderance of the evidence that the stated reasons were a pretext for discrimination.

*Redlin v. Grosse Pointe Pub. Sch. Sys.*, 921 F.3d 599, 606–07 (6th Cir. 2019) (citations omitted).

purposes of *McDonnell Douglas*. *See, e.g.*, *Keys v. Humana, Inc.*, 684 F.3d 605, 609 (6th Cir. 2012) ("The district court's requirement that [the plaintiff's] complaint establish a prima facie case under *McDonnell Douglas* and its progeny is contrary to Supreme Court and Sixth Circuit precedent."); *Clough v. State Farm Mut. Auto. Ins. Co.*, No. 13-2885-STA-tmp, 2014 WL 1330309, at *6 (W.D. Tenn. Mar. 28, 2014) ("In light of *Swierkiewicz*, the Court concludes that strictly speaking Plaintiff need not plead all of the elements of the prima facie case in order to survive a motion to dismiss."). The Court recently explained this in some detail in resolving a motion to dismiss a plaintiff's THRA claims:

> But since this is a Motion to Dismiss, and not a motion for summary judgment, Plaintiff is not required to carry a burden of presenting evidence establishing a prima facie case under *McDonnell Douglas*. *Keys v. Humana, Inc.*, 684 F.3d 605, 609 (6th Cir. 2012). *McDonnell Douglas* "is an evidentiary standard, not a pleading requirement." *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 510-11 (2002). "[T]he precise requirements of a prima facie case can vary depending on the context and before discovery has unearthed the relevant facts and evidence, it may be difficult to define the appropriate formulation. Significantly, the Supreme Court identified the possibility that discovery may produce direct evidence of discrimination, rendering the *McDonnell Douglas* burden-shifting framework inapplicable to a plaintiff's claims." *Keys*, 684 F.3d at 609 (discussing *Swierkiewicz*) (internal citation omitted).
>
> This only stands to reason. After all, the *McDonnell Douglas* framework contemplates that a defendant can, if necessary, attempt to prevail by setting forth its position on a factual issue (*i.e.*, as to the existence of a legitimate, non-discriminatory reason for its challenged employment actions). 411 U.S. at 802. But except perhaps in a very limited sense (as for example when a district court will consider, if uncontradicted in a plaintiff's reply brief, a defendant's factual assertions as to the content in a document referred to in the plaintiff's complaint) a defendant's position regarding the facts simply is not be considered on a Rule 12(b)(6) motion to dismiss. *See Burns v. United States*, 542 F. App'x 461, 466-67 (6th Cir. 2013). Therefore, the *McDonnell Douglas* framework does not apply on this Motion, and Plaintiff is not required here to make out a prima facie case as required by *McDonnell Douglas* on a motion for summary judgment; instead Plaintiff must satisfy the plausibility requirement for a motion to dismiss.

*Jodry v. Fire Door Sols., LLC*, No. 3:20-cv-00243, 2020 WL 7769924, at *3–4 (M.D. Tenn. Dec. 30, 2020) (Richardson, J.). So as noted in *Keys*, *McDonnell Douglas* ultimately may not apply at

all in a particular case; in particular it would not apply if the plaintiff can rely on direct evidence of discrimination, rather than indirect evidence of discrimination (which is what *McDonnell Douglas* deals with). And even if *McDonnell Douglas* would apply at later stages of the case, it cannot sensibly be applied at the pleading stage, and so its requirement of a showing of a *prima facie* case must not be applied at the pleadings stage.

## DISCUSSION

Defendant argues that all counts of the Complaint should be dismissed for the following respective reasons:[6] 1) Count II because (according to Defendant) Plaintiff did not timely file a Title VII race discrimination charge in regards to her termination and pre-termination events, and she did not file suit within 90 days of the determination letter;[7] 2) Count III because (according to Defendant) Plaintiff's Section 1981 race discrimination claim is time-barred pursuant to a one-year statute of limitations in the state of Tennessee; 3) Count I because (according to Defendant) Plaintiff's ADAAA claim does not state a claim upon which relief may be granted inasmuch as (according to Defendant) Plaintiff was not a qualified individual and did not request a reasonable accommodation. Defendant also asserts, relevant to Counts II and III, that Plaintiff's argument

---

[6] To the extent indicated below, these arguments fall short of providing grounds for dismissing all claims in their entirety, because Defendant's argument did not address Count I to the extent it set forth retaliation claims.

[7] Defendant refers to the determination letter as conveying the "rejection of her charge." (Doc. No. 14 at 1). This characterization is not accurate in that it seems to refer to the determination letter, which stated that Plaintiff's claims had merit and that the claim would proceed to the conciliation phase. (Doc. No. 1). Perhaps Defendant, in characterizing the EEOC's disposition of the charge as one of "rejection," felt bolstered by the fact that the Notice of Right to Sue (a separate document that followed the determination letter) reflected both "dismissal" of her charge and the EEOC's decision not to bring suit against Defendant. However, this Notice of Right to Sue was not really a "rejection" of the charge; it certainly was not a rejection on the merits. Instead, it marked the closing of the EEOC's file and allowed Plaintiff to proceed in a federal civil action.

8

regarding an alleged similarly situated employee (a white coworker) fails as a matter of law.[8] (Doc. No. 14).

Plaintiff notes in her response that although Defendant did not style its Motion as a partial motion, Defendant presented no argument that Plaintiff's retaliation claims under the ADAAA[9] should be dismissed, and so Defendant's Motion is really only a partial Motion to Dismiss. (Doc. No. 19 at 13). In a footnote in its Reply, Defendant argues, "Plaintiff's claim that Defendant did not move to dismiss her retaliation claim is without merit." (Doc No. 20 at 3). This is confusing because Plaintiff brings two retaliation claims, not one, and Defendant does not clarify where or how it addressed such claims. The Court does not see anywhere that Defendant makes a substantive argument regarding Plaintiff's ADAAA retaliation claims. However, to the extent that Defendant intended its arguments to apply to the ADAAA retaliation claim, the Court would find dismissal to be inappropriate for the same reasons discussed below.

The Court will first address evidentiary issues raised by Plaintiff, before turning to each of the substantive arguments of Defendant's Motion in turn.

A.  Evidence attached to the Motion and Response

The Court must first determine whether it can properly consider the exhibits attached respectively to Defendant's Motion and Plaintiff's Response. Plaintiff seems to argue that the

---

[8] As the Court will discuss below, it appears that Defendant has misperceived the count to which the fourth argument should apply. Defendant discusses it in connection with Count I, but the Court believes this argument is more appropriately aimed at Counts II and III.

[9] It seems that Defendant did move to dismiss Plaintiff's race retaliation claim, in that Defendant's arguments regarding the Section 1981 race discrimination claims being untimely, if accepted by the Court, would entail dismissal of Plaintiff's Section 1981 retaliation claim as well.

Motion should be converted to a motion for summary judgment because Defendant attached exhibits to its Motion.[10] (Doc. No. 19 at 4). Though not contesting the authenticity of the documents, Plaintiff claims that the Court cannot consider them because they "lack any foundation or authentication." (*Id.* at 12). Defendant counters that "[e]very document attached to Defendant's Motion to Dismiss was cited and referenced in Plaintiff's Complaint." (Doc. No. 20 at 2).

Fed. Rule of Civ. P. 12(d) states that "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." However, there is an exception to this Rule: "When a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008); *Doe*, 219 F. Supp. 3d at 652-53; *Blanch*, 333 F. Supp. 3d at 791-92. "It must also be clear that there exist no material disputed issues of fact regarding the relevance of the document." *Mediacom Se. LLC v. BellSouth Telecommunications, Inc.*, 672 F.3d 396, 400 (6th

---

[10] Alternatively, Plaintiff argues that whether a plaintiff fails to comply with a pre-suit administrative process is sometimes determined on a summary judgment motion, instead of a motion to dismiss. Even assuming the case cited by Plaintiff (which arose in the context of the exhaustion of prison remedies under the Prison Litigation Reform Act) is relevant here, it notes that "[i]n the rare event that a failure to exhaust is clear on the face of the complaint, a defendant may move for dismissal under Rule 12(b)(6). Otherwise, defendants must produce evidence proving failure to exhaust in order to carry their burden." *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014). Defendant is arguing here that Plaintiff's failure to take certain actions within the relevant timeframes is clear from the face of the Complaint and the documents referenced in the Complaint. The Court therefore is unpersuaded that it should convert the Motion to a motion for summary judgment on this exhaustion-related theory, even assuming the theory were appropriately applied to this case.

Cir. 2012) (cleaned up and quotation omitted). "In other words, if the authenticity, validity, or enforceability of a document is not in dispute, the court may consider it on a motion to dismiss, but a genuine dispute as to the legal sufficiency of a document requires the court to consider the issue under a motion for summary judgment standard." *Lewis Lumber & Milling, Inc. v. Mereen-Johnson, LLC*, No. 3:17-CV-00643, 2018 WL 6181356, at *2 (M.D. Tenn. Nov. 27, 2018).

All five of the exhibits attached to Defendant's Motion are referenced in Plaintiff's Complaint and are central to the claims contained therein. Defendant attached five exhibits to its Motions: (1) the EEOC charge (Doc. No. 13-1), (2) Plaintiff's job description (Doc. No. 13-2), (3) Plaintiff's functional capacity examination (Doc. No. 13-3), (4) Plaintiff's return to work slip (Doc. No. 13-4), and (5) Plaintiff's modified return to work slip (Doc. No. 13-5). The EEOC charge was a condition precedent to her filing the instant action, and Plaintiff discusses it at length in her Complaint. (Doc. No. 1 at ¶¶ 7, 30). The job description, functional capacity examination, return to work slip, and modified return to work slip are all also referenced in the Complaint (though Plaintiff does not necessarily use the same names for the documents as Defendant does) and are central to her claim, which alleges essentially that Defendant did not respond appropriately to her doctor's notes or offer her an accommodation. (*Id.* at ¶¶ 9, 15, 21, 18, 19, 21). Despite referencing these documents in her Complaint, and them being central to her claim that she was improperly terminated due to her disability, Plaintiff did not attach any documents to her Complaint. In her Response, Plaintiff notes correctly that none of these documents have been authenticated, but the Court may consider them as long as there is no dispute as to their authenticity, validity, and enforceability. *Lewis Lumber & Milling, Inc.*, 2018 WL 6181356, at *2. There does not appear to be any such dispute. Therefore, the Court finds that it can properly consider the documents attached

11

to Defendant's Motion, even absent a formal establishment of their authenticity by Defendant, without converting the Motion into one for summary judgment.

Additionally, Plaintiff attached to her Response her Notice of Right to Sue (Doc. No. 19-1). This document was also referenced in and integral to the Complaint. (Doc. No. 1 at ¶ 36). There appears to be no dispute from Defendant as to the authenticity, validity, or enforceability of this document. Though attached to Plaintiff's Response and not to Defendant's Motion (which would be the only kind of attaching document expressly contemplated in the above-referenced case law blessing consideration of certain attachments), the document's being attached to something other than the Motion does not seem to preclude the Court from considering the document. *See Mediacom Se. LLC*, 672 F.3d at 400 (noting that it would be appropriate to consider a document attached to a motion to intervene because it appears in the record if it is referred to in the complaint and central to the claims therein). Therefore, the Court also finds that it can consider this document as it was referenced in the Complaint and central to the claims therein.

In sum, the Court finds that it can consider the documents attached to Defendant's Motion and to Plaintiff's Response, without converting the instant Motion into one for summary judgment.

B.  Title VII Race Discrimination Claim[11]

---

[11] The undersigned will highlight a few important points regarding the terminology used herein, by reference to something he wrote years ago:

> On the subject of limitations, courts often use language loosely, interchanging various terms for one another. For maximum clarity, terms must be defined so that important concepts are distinguishable from one another, then used consistently in accordance with those definitions. Herein, legal authorities will be paraphrased in terms of the following definitions to convey the concepts expressed therein, regardless of the terms used (or misused) by the authority being cited.

12

Defendant argues that Plaintiff's Title VII race discrimination claim (Count II) is time barred. (Doc. No. 14 at 7). Plaintiff counters that 1) her amendment related back to her original EEOC charge, and 2) Defendant improperly conflates the issuing of a Notice of Right to Sue with the issuing of a Determination Letter, and as a result Defendant is applying the wrong limitations period to the facts at hand. (Doc. No. 19 at 5).

Defendant argues that Plaintiff's Title VII charge of race discrimination was not filed with the EEOC until the filing of her amended EEOC charge on April 23, 2018. (Doc. No. 14 at 8). Defendant states that the original EEOC charge, filed on December 13, 2017, did not include claims of race discrimination and that the box for race discrimination was unchecked. (*Id.*). Plaintiff responds that the original EEOC charge checked boxes for both Retaliation and Disability, that she subsequently amended her charge to allege race discrimination, and that both the original and amended charges arose out of the same subject matter. (Doc. No. 19 at 5-6). In the amended EEOC charge, Plaintiff checked the box indicating race discrimination, and added (among other things) the following information regarding her race discrimination claim: "Black employees at [Defendant] [] were treated less favorably than Caucasian employees in terms of assignments

---

As used herein, a "statute of limitations" refers to a legislative enactment, or codification thereof, that sets forth a limitations period. . . . A "limitations period" refers to the length of time-the specific number of days, months, or years-in which a given claim can be commenced, as set forth in a statute of limitations. "Limitations" [refers] to the legal doctrine whereby a plaintiff is barred from bringing a claim based upon the lapse of the applicable limitations period. To say that limitations "applies" is to say that, under limitations law, a claim is time-barred. "Limitations law" refers to the entire body of rules, both statutory and judge-made, by which courts determine whether limitations applies in a given case.

Eli J. Richardson, *Eliminating the Limitations of Limitations Law*, 29 Ariz. St. L.J. 1015, 1017–19 (1997). When using his own words, the undersigned intends to stick generally to this terminology, with the caveat that the caselaw he quotes may not do so and thus may be less precise or looser in their terminology.

following injuries. I learned that an employee, Ms. Christy Champlin (Caucasian) had been allowed to work light duty following surgery on her hand." (Doc. No. 13-1 at 4-5).

### 1. Filing of the amended charge with the EEOC

Title VII requires an employee to file a charge with the EEOC within either 180 days or 300 days of an allegedly unlawful employment practice, depending on the law of the applicable state and whether that state is a "deferral state."[12] 42 U.S.C. §2000e-5(e)(1); *Alexander v. Local 496, Laborers' Int'l Union of N. Am.*, 177 F.3d 394, 407 (6th Cir. 1999). "The United States Supreme Court has held that these time periods operate, essentially, as a form of [limitations period]." *Whitehead v. Grand Home Furnishings, Inc.*, No. 2:19-CV-00040-DCLC, 2020 WL 1237423, at *4 (E.D. Tenn. Mar. 13, 2020) (citing *Nat'l R.R. Pass. Corp. v. Morgan*, 536 U.S. 101, 122 (2002)). Tennessee is a deferral state, and so the 300-day period, instead of the 180-day period, applies if a plaintiff who has filed with the EEOC filed first or contemporaneously with the Tennessee Human Rights Commission ("THRC"). *Equal Employment Opportunity Comm'n v. Dolgencorp, LLC*, 196 F. Supp. 3d 783, 799 (E.D. Tenn. 2016), *aff'd*, 899 F.3d 428 (6th Cir. 2018), and *aff'd*, 899 F.3d 428 (6th Cir. 2018). Plaintiff here filed her charge with the THRC concurrently with her charge with the EEOC. (Doc. No. 13-1). Therefore, the 300-day limitations period applies, instead of the 180-day period.

The regulations allow for amendments to relate back to the original charge for purpose of limitations:

> A charge may be amended to cure technical defects or omissions, including failure to verify the charge, or to clarify and amplify allegations made therein. Such amendments and amendments alleging additional acts which constitute unlawful employment practices related to or growing out of the subject matter of the original

---

[12] A "deferral state" is a state that has enacted its own laws prohibiting discriminatory employment. *Alexander v. Local 496, Laborers' Int'l Union of N. Am.*, 177 F.3d 394, 406 (6th Cir. 1999).

charge will relate back to the date the charge was first received. A charge that has been so amended shall not be required to be redeferred.

29 C.F.R. § 1601.12(b). In *Zanders v. O'Gara-Hess & Eisenhard Armoring Co.*, the Sixth Circuit faced the question of whether a plaintiff's race discrimination claim in connection with his termination ("termination claim") was time barred, when his original EEOC charge contained only a claim regarding race discrimination in connection with his suspension, and the plaintiff later amended his EEOC charge to include race discrimination in connection with his termination. 952 F.2d 404, 1992 WL 2906 (6th Cir. 1992). The termination claim would have been time-barred unless it related back to the original charge. The Sixth Circuit found that the termination claim was timely because it did relate back to the original filing, which put the EEOC on "reasonable notice" of the plaintiff's forthcoming termination claim such that the EEOC's investigation naturally should encompass the termination claim. *Id.* at *3. Interpreting the regulation, the Sixth Circuit also noted that the termination claim was "facially related" to the first claim, and "they indicate one continuous action . . . the nexus between the charges is very strong." *Id.* at *4.

Defendant argues that Plaintiff's race discrimination claims do not relate back to her original EEOC charge (which was solely for discrimination and retaliation based on disability):

> Here, Plaintiff's untimely race discrimination claim in the amended charge raised an entirely new legal theory based on race supported by allegations distinguishable from the facts supporting her original disability claim. The new allegation that one white employee was allowed to work light duty is distinct (and does not "grow out") from the original subject matter that Plaintiff was solely discharged due to permanent work restrictions.

(Doc. No. 14 at 8-9). Despite Defendant's argument, it appears to the Court that the race discrimination charge does relate back to the disability discrimination and retaliation charges. The disability and the race discrimination claims arose out of the same events: refusing to allow Plaintiff to return to work and subsequently terminating her employment. Because the alleged race

15

discrimination stems from the same events as the alleged disability discrimination and retaliation, evidence of the race-related charge would likely have arisen in the EEOC investigation of the originally filed disability-related charges, and it appears from the Determination Letter issued by the EEOC that both were investigated concurrently. (Doc. No. 1 at 10-13). Additionally, because they arose from the same events, the original charges and subsequent charge are "facially related," and the "nexus between the charges is very strong." *Zanders*, 1992 WL 2906 at *4.

Therefore, the Court finds that Plaintiff's race discrimination claim related back to her disability discrimination and retaliation claims, and that it therefore is not barred by the 300-day limitations period.

## 2. Timely filing of Complaint

Next, Defendant argues that Plaintiff was required to bring suit within 90 days of being notified that her charge was dismissed by the EEOC. (Doc. No. 14 at 9). Defendant points to Plaintiff's Complaint, which states that on December 12, 2019, the EEOC issued a determination letter finding reasonable cause to believe that there was a failure to provide a reasonable accommodation in violation of the ADAAA. (Doc. No. 1 at ¶ 35). Defendant then argues that this suit was not filed until June 9, 2020 (more than 90 days after the determination letter date) and thus should be dismissed. (Doc. No. 14 at 9). Plaintiff responds that it is not the date of the determination letter, but rather the date of receipt of the Notice of Right to Sue, that starts the running of the 90-day clock. (Doc. No. 19 at 7). Defendant counters primarily by accusing Plaintiff of trying to add "language to a federal statute that simply does not exist." (Doc. No. 20 at 1).[13]

---

[13] Additionally, Defendant cites a case in which the Sixth Circuit described the "ordinary usage" of the word "notified" as "the completed act of bringing information to the attention of another." *Detroit Coil Co. v. Int'l Ass'n of Machinists & Aerospace Workers, Lodge No. 82*, 594 F.2d 575, 580 (6th Cir. 1979). But this case is unhelpful to Defendant, even if the Court accepts that the "ordinary usage" of the word "notified" (or its present-tense form "notify," which is the precise

16

The applicable statute states that a suit may be brought by the aggrieved person filing the EEOC charge, but only after the EEOC has either (a) dismissed the charge, or (b) not filed a civil action within 180 days after the filing of the charge by the aggrieved person. 42 U.S.C. § 2000e-5(f)(1). The statute requires the Commission to "notify the person aggrieved"[14] about either its dismissal of the charge or non-filing of a civil action (or both, as in the present case)[15] and then states that "within ninety days after the giving of such notice a civil action may be brought against the respondent named in the charge." *Id.* In context, it is clear that the referenced "notify[ing]" is the same thing as the referenced "giving of such notice"; to make this even clearer, the statute could have appropriately used the word "notification" instead of "notice" in the latter phrase.

The Sixth Circuit has repeatedly made clear that the "notice" in the statute means, specifically, the Notice of Right to Sue (also known as a right-to-sue letter or notice, or just a right to sue), and that the 90-day period begins to run after the plaintiff receives the Notice of Right to Sue. *E.g.*, *Peete v. Am. Standard Graphic*, 885 F.2d 331, 331 (6th Cir. 1989) ("2000e–5(f)(1)

---

statutory word at issue here) governs the interpretation of the word "notify" used in the statute at issue here. As suggested herein, the word that truly matters here is not "notified" or even "notify," but rather "notice." Even though, as noted herein, the statute equates the giving of "notice" to the aggrieved person with the providing of "notif[ication]" to the aggrieved person, the word to be interpreted is "notice" and not "notify" or "notified." And as for the word "notice," the Court does not divine its meaning for present purposes from its "ordinary usage," but rather from Sixth Circuit case law and the statutory context in which it found here—which both tell the Court what "notice" means for current purposes, *i.e.*, notice (as provided in the Notice of Right to Sue) that 180 days have elapsed without the EEOC filing a civil suit.

[14] The statute is not explicit as to what the EEOC is supposed to notify the aggrieved person about, but in context it could only be the EEOC's dismissal of the charges due to the EEOC's non-filing of a civil action within 180 days.

[15] In the present case, the EEOC actually gave notice of *both* dismissal *and* non-filing within 180 days. In its Notice of Right to Sue, which was issued more than 180 days after Plaintiff filed her EEOC charge, the EEOC both notified Plaintiff of its "dismissal" of her charge and advised her that it would not bring suit against Defendant. (Doc. No. 19-1).

requires that a complaint be filed within ninety days after the right-to-sue notice is actually *received*."); *Hopkins v. United Parcel Serv.*, 221 F.3d 1334 (6th Cir. 2000) (same); *Disena v. TS Employment Inc.*, No. 16-2269, 2017 WL 4124889, at *2 (6th Cir. May 11, 2017) (same); *Keystone Filler & Mfg. Co. v. Am. Mining Ins. Co.*, 55 F. App'x 733 (6th Cir. 2003) (same); *A've v. Serv. Employees Int'l Union*, 24 F. App'x 326, 330 (6th Cir. 2001) (same); *Brown v. Hyperion Seating Corp.*, 194 F.3d 1311 (6th Cir. 1999) (same). In fact, "[a] plaintiff must possess a right-to-sue letter from the EEOC in order to file suit and pursue an action under Title VII." *Hollowell v. Michigan Consol. Gas Co.*, 18 F. App'x 332, 337 (6th Cir. 2001). Defendant cites the Court to, and the Court is aware of, no authority that receipt of a determination letter, instead of a (subsequent) Notice of Right to Sue, starts the 90-day clock. In fact, some of the authority cited to by Defendant clearly states that the start of the 90-day period is tied to the Notice of Right to Sue, and Defendant itself states the correct rule in its own Memorandum in support of its Motion in one place. *Rembisz v. Lew*, 830 F.3d 681, 682 (6th Cir. 2016); (Doc. No. 14 at 9).

Plaintiff's Notice of Right to Sue was mailed on March 26, 2020, and Plaintiff filed this lawsuit 75 days after the Notice of Right to Sue was issued. (Doc. No. 19-1; Doc. No. 19 at 7). The Complaint specifically alleges that this was the case, stating that "the EEOC issued Plaintiff a Notice of Right to Sue and this action was commenced within 90 days of receipt of the EEOC's Notice of Right to Sue." (Doc. No. 1 at ¶ 7).

For the reasons discussed, Defendant's sole, limitations-based argument for dismissal of Count II is without merit. Thus, the Court will not grant Defendant's Motion in regards to Plaintiff's Title VII claims, and Plaintiff's Title VII race discrimination claim survives the Motion.

C. Section 1981 Race Discrimination Claim

Defendant claims that Plaintiff's race discrimination claim under Section 1981 is time-barred for a different reason than the one Defendant claimed time-barred Plaintiff's Title VII racial discrimination claim. That is, whereas with respect to Title VII Defendant invoked a time bar that was akin to and essentially a statute of limitation, with respect to Section 1981 Defendant invokes an actual statute of limitations.

There is no question, as discussed below, that Plaintiff's race discrimination claim under Section 1981 (part of Count III) is subject to one or the other of two statutes of limitations. Defendant argues that the applicable statute of limitations is a Tennessee statute prescribing a one-year limitations period. (Doc. No. 14 at 11). Plaintiff responds that the applicable statute of limitations is a federal one that prescribes a four-year limitations period. (Doc. No. 19 at 8). The dispute arises from the fact that by statute, as explained below, one category of claims under Section 1981 falls under a federal statute prescribing a four-year limitations period, while the other category of claims falls instead under the applicable state statute of limitations (in this case, a Tennessee statute prescribing a one-year limitations period).

The two categories of claims are distinguished from one another by the timing of the legislation that made possible various kinds of claims. A claim falls into either one category or the other depending on when the claim was made legally viable by federal civil rights legislation. As the Sixth Circuit has explained:

> Congress enacted a four-year statute of limitations, 28 U.S.C. § 1658(a), for causes of action arising under an Act of Congress enacted after December 1, 1990, and that statute applies "if the plaintiff's claim . . . was made possible by a post-1990 enactment." *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 382 (2004). Congress has not enacted a statute of limitations for claims brought under the pre-December 1, 1990, versions of §§ 1981, 1983, 1985. Therefore, for all claims raised under the pre-December 1, 1990, versions of these statutes, federal courts apply the forum state's personal-injury statute of limitations. *See id.* at 378, 383-84.

19

*Mitchell v. Taylo*r, No. 16-6335, 2018 WL 4162255, at *2 (6th Cir. Apr. 16, 2018). A district court in this circuit, facing arguments nearly identical to the ones the parties make here, further explained when a court should apply the one-year limitations period prescribed by Tennessee law (per personal-injury claims) as opposed to the four-year limitations period prescribed by federal law:

> The issue in this case arises because section 1981 does not contain its own statute of limitations. *See* 42 U.S.C. 1981. Prior to December 1, 1990, federal courts applied the "most appropriate or analogous state statute of limitations" to claims based upon § 1981. *Goodman v. Lukens Steel Co.*, 482 U.S. 656, 660 (1987). The Sixth Circuit determined that the proper Tennessee statute of limitations to apply to a § 1981 claim is Tennessee Code Annotated § 28-3-104. *Jackson v. Richards Med. Co.*, 961 F.2d 575, 578 (6th Cir. 1992). However, on December 1, 1990, "Congress enacted a catchall [four]-year statute of limitations for actions arising under federal statutes enacted after December 1, 1990." *Jones*, 541 U.S. at 371; *see* 28 U.S.C. § 1658.3
>
> To determine whether the federal statute of limitations or the state statute of limitations applies to actions after December 1, 1990, this Court must consider whether "the plaintiff's claim against the defendant was made possible by a post-1990 enactment" to § 1981. *Jones v. R. R. Donnelley & Sons Co.*, 541 U.S. 369, 382 (2004). The Supreme Court discussed the pre- and post-1991 versions of § 1981 as follows:
>
>> As first enacted, § 1981 provided in relevant part that "all persons [within the jurisdiction of the United States] shall have the same right, in every State and Territory . . . to make and enforce contracts . . . as enjoyed by white citizens." We held in *Patterson v. McLean Credit Union*, 491 U.S. 164 (1989) . . . that the statutory right "to make and enforce contracts" did not protect against harassing conduct that occurred after the formation of the contract. Under that holding, it is clear that petitioner's [claims] ... do not state violations of the original version of § 1981. In 1991, however, Congress responded to Patterson by adding a new subsection to § 1981 that defines the term " 'make and enforce contracts' " to include the "termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b) . . . . The critical question, then, is whether [Plaintiff's] causes of action "ar[ose] under" the 1991 [Amendments] or under § 1981 as originally enacted.

*Jones*, 541 U.S. at 372-73 (footnotes and citations omitted) (emphasis added).

An important focal point in the analysis of whether the plaintiff's claims were actionable under the original version of § 1981 is whether the "failure to promote rose to the 'level of an opportunity for a new and distinct relation between the employee and the employer . . . .' " *Patterson*, 491 U.S. at 185; *see, e.g. Hishon v. King & Spalding*, 467 U.S. 69 (1984) (holding that promotion from law firm associate to partner constituted a new and distinct relationship). If the failure to promote did meet this criterion, the claim arises from the unamended version of § 1981 and the one-year Tennessee statute of limitations applies. Otherwise, the claim is deemed to have arisen from the 1991 amendments and the four-year federal statute of limitations governs.

*Lowery v. Fed. Express Corp.*, No. 02-2056, 2007 WL 9710095, at *4–5 (W.D. Tenn. Sept. 11, 2007); *see also Fonteneaux v. Shell Oil Co.*, 289 F. App'x 695, 698–99 (5th Cir. 2008); *Thomas v. First Tennessee Bank*, No. 04-3002 B, 2007 WL 114294, at *3 (W.D. Tenn. Jan. 10, 2007).

Several courts in this circuit have looked at the scenario in which a plaintiff's cause of action arises from a dispute over a promotion (or absence thereof) using the "new and distinct employment relationship" standard. The Court in *Lowery* summarized the case law in this circuit as such:

> The Sixth Circuit addressed the "new and distinct relationship" test in *Anthony v. BTR Automotive Sealing Sys., Inc.*, 339 F.3d 506 (6th Cir. 2003). In *Anthony*, the Court considered whether the failure to promote an employee from a lab testing position at one plant to a laboratory supervisor position with responsibilities at multiple plants constituted the type of new and distinct relationship anticipated by *Patterson* and the pre-1991 version of § 1981. *Id.* at 508-10. The Sixth Circuit determined that the plaintiff's claim in *Anthony*, despite being a well-desired promotion, was not the type of contractual change that established a "new and distinct relationship." *Id.* at 511-12.

> Furthermore, this Court has stated that a " 'new and distinct relationship' should not be measured by quantitative terms, such as pay raises, but rather whether there 'exists a meaningful, qualitative change in the contractual relationship,' such as a change from non-supervisory to supervisory positions or advancements from hourly to salaried compensation." *Thula Thomas v. First Tennessee Bank*, No. 04-3002 B, 2007 WL 114294, at *7 (W.D. Tenn. Jan. 10, 2007). However, this Court has stated that when "the promotion[ ] at issue [was] best characterized as a mere advancement in [the plaintiff's] career path," the claim was not actionable until after the 1991 amendments. *Aaron Malone v. State of Tenn.*, No. 03-2869 B, 2005 WL 2671343, at *6 (W.D. Tenn., Oct. 19, 2005). Thus, the clear delineation made by

21

the courts that have considered this issue is the potential contractual change with the promotion, not the benefits or expanded roles of the employee . . .

Based upon the facts set forth in the record, the Court determines that Plaintiff's desired promotions would not have created a "new and distinct relationship" between himself and his employer. As this Court noted in *Malone*, a "mere advancement" or otherwise minor transfer between one management position and another is not the type of significant contractual change that the pre-1991 version of § 1981 anticipated. Instead, Plaintiff is complaining of "post-formation" conduct that was only actionable after the 1991 amendments to § 1981. *See Jones*, 541 U.S. at 372-73. Therefore, Plaintiff's claim is covered under the four-year statute of limitations as codified at 28 U.S.C. § 1658.

*Lowery*, 2007 WL 9710095, at *5.

Defendant encourages the Court to consider a light-duty request to be a "new and distinct employment relationship." Defendant cites the out-of-circuit case of *Beck v. City of Durham*, 129 F. Supp. 2d 844, 852 (M.D.N.C. 2000), for the proposition that "Plaintiff's pled demand for permanent 'light duty' is the quintessential example of a 'new and distinct employment relation[ship].'" (Doc. No. 14 at 11). By using quotation marks around "new and distinct employment relation[ship]," calling Plaintiff's situation a "quintessential example," and not disavowing the direct applicability of *Beck* by preceding the citation with the "*see*" signal, Defendant represents that *Beck* stands directly and very strongly for the proposition that a demand for permanent light duty is a demand for a "new and distinct employment relationship," such that the one-year state limitations period would be applicable in light of Plaintiff's demand for light duty.

This representation is, regrettably, simply misleading. *Beck* did involve a Section 1981 claim premised on the denial of a request for light duty. But the *Beck* opinion neither uses the term "new and distinct employment relation[ship]" nor engages in any substantive analysis of the "new and distinct employment relationship" test. Though the *Beck* court does not say so outright, it appears that there was no dispute as to which statute of limitations (state or federal) governed, as

22

the court merely announced with no ado (or explanation) that "North Carolina's three-year statute of limitations for personal injury actions governs the Section 1981 claim." 129 F. Supp. 2d at 852. Instead, the parties' dispute was over when the action accrued so as to start the running of the limitations period. *Id.* At most, *Beck* stands for the proposition that (for reasons unstated), the relevant state statute of limitations might apply to a particular claim based on the denial of a request for light duty. Despite Defendant's (mis)representation, *Beck* is of no value in establishing that the state statute of limitation is (or is not, for that matter) applicable to Plaintiff's Section 1981 claim under the "new and distinct employment relationship" test.

The Court is not aware of any cases in this circuit that examine whether a request for "light duty" would constitute a new and distinct employment relationship. Additionally, with its arguments focusing on light duty, Defendant mischaracterizes the allegations in Plaintiff's Complaint. In her Complaint, Plaintiff indicates that she informed Defendant that "she was fully able to perform the job functions of the brake component installation job and several other jobs in the paint and assembly department, and that she willing [sic] to perform any other position available within her restrictions." (Doc. No. 1 at ¶ 22). Instead of seeking only a light-duty role as Defendant implies, Plaintiff actually was seeking to work in a different job of the Paint and Assembly Department, be it one of several that she could perform fully or, *alternatively*, other ones that she could perform either fully *or* in a light duty role.

The Court is entirely unpersuaded by Defendant's reliance not only on *Beck*, but also on Defendant's argument as a whole regarding light duty ushering in a new and distinct employment relationship. These arguments do not even apply to Plaintiff's alternative request to be transferred to a job that she could fully perform. And to the extent Plaintiff's claim is based on her alternative request for a light-duty position, the Court is unpersuaded that a shorter limitations period should

23

apply, because such request in the Court's view did not portend a new and distinct employment relationship.

In expressing this view, the undersigned realizes that the concept of "new" and "distinct" are subjective and somewhat ambiguous. Indeed, the undersigned has in the past made this observation regarding the terms "same" and "different," which of course are an antonym and synonym, respectively, of "distinct." *See* Eli J. Richardson, *Taking Issue with Issue Preclusion: Reinventing Collateral Estoppel*, 65 Miss. L.J. 41, 70 (1995). The determination of whether something—in this case, a proposed new employment arrangement—is "new and distinct" is as much a linguistic one as it is a factual one, since the question is whether the term linguistically actually describes the circumstances to which it supposedly applies. In many cases reasonable minds could disagree on the issue. Nevertheless, it falls to the undersigned to make this determination in his case, calling it like he sees it.

And in the undersigned's view, what Plaintiff was proposing here on balance is not properly considered a new and distinct employment relationship with Defendant. Plaintiff was not seeking a promotion, increased responsibility, pay increase, or anything else the undersigned would consider a significant change in *her relationship with her employer* (as opposed to her *day-to-day job responsibilities*). Plaintiff merely sought to be reassigned within her current department (the Paint and Assembly Department) to a different role that she could perform fully (such as brake component installation) or another position with light duty. There is no indication that Plaintiff and Defendant's relationship would have changed as a result of Plaintiff moving within her existing department. Instead, Plaintiff's claims of race discrimination and retaliation arise out of her existing relationship with her employer. Therefore, the Court finds that the appropriate limitations period to apply is the four-year limitations period prescribed by federal statute, and not

the one-year limitations period that would be applicable under Tennessee state law. This four-year limitations period will expire no earlier than June 19, 2021, and so Plaintiff has filed her Complaint within the applicable limitations period.

For the reasons discussed, the Court finds that Plaintiff's claims under Section 1981 are timely. Thus, the Court will not grant Defendant's Motion on limitations grounds.

D. ADAAA Claims

Defendant argues that Plaintiff has not sufficiently stated a claim upon which she may be granted relief under the ADAAA. (Doc. No. 14 at 12). Defendant argues that Plaintiff was not a qualified employee and that her reasonable accommodation request was *per se* unreasonable. (Doc. No. 14).

The ADAAA prohibits employers from discriminating against a qualified individual on the basis of disability. 42 U.S.C.A. § 12112. The parties are unclear regarding what, exactly, Plaintiff must plead in order to survive a motion to dismiss an ADAAA claim. Defendant seems to imply that Plaintiff must adequately allege a *prima facie* case under *McDonnell Douglas*, but in so doing it cites primarily to cases decided in the summary judgment context, without addressing with clarity the fact that this case has not reached that stage and is instead at merely the pleading stage. (Doc. No. 14). Plaintiff correctly notes that she is not required to plead her *prima facie* case under *McDonnell Douglas* in order to survive a motion to dismiss. (Doc. No. 19 at 3). However, neither party clarifies what Plaintiff *is* required to plead in order to survive the present motion.

The Sixth Circuit has indicated that, in order to survive a motion to dismiss on an ADAAA claim, a plaintiff "must plead facts that make plausible the inference that (1) she is disabled, (2) she is qualified to perform her job requirements with or without reasonable accommodation, and

25

(3) she would not have been discharged but for the disability."[16] *Darby v. Childvine, Inc.*, 964 F.3d 440, 444 (6th Cir. 2020); *Frengler v. Gen. Motors*, 482 F. App'x 975, 976 (6th Cir. 2012) (same); *Esparza v. Pierre Foods*, 923 F. Supp. 2d 1099, 1105 (S.D. Ohio 2013) ("For purposes of Rule 12(b)(6), the Court need only consider whether the amended complaint provides sufficient factual content to present plausible claims under the relevant statutes. That said, the interpretive guidelines for the federal regulations do envision some threshold consideration of whether a person's medical condition, as alleged, plausibly states a 'disability.'" (internal citations omitted)). "At this stage, we consider whether the complaint states a claim for relief that is plausible, when measured against the elements of an ADAAA claim. To survive a motion to dismiss, in other words, [Plaintiff] must make sufficient factual allegations that, taken as true, raise the likelihood of a legal claim that is more than possible, but indeed plausible."[17] *Id.* (internal citation omitted).

As noted above, Defendant is attacking Plaintiff's Complaint on the grounds that 1) she was not a qualified individual, and 2) her accommodation request was *per se* unreasonable. The Court will account for these attacks in determining whether Plaintiff has plausibly alleged facts that allow her claim to survive under *Darby*.

### 1. Qualified Individual

---

[16] Plaintiff argues that since these are questions of fact, the Court should not consider them until after discovery. (Doc. No. 19 at 9). Though Plaintiff is not required to prove her claims at this time, she is required to allege facts that make plausible the inference that she can meet the pleading standard described in *Darby*. Thus, the Court at this stage does consider the facts at this stage, albeit only the facts *as the Complaint alleges them to be*, and asks whether they plausibly suggest entitlement to relief.

[17] By "elements," the Court believes the Sixth Circuit here meant the previously enumerated three things needed to survive a motion to dismiss, and not the entire *prima facie* case that would be potentially applicable on a motion for summary judgment.

26

Defendant argues that Plaintiff cannot be qualified, because the weight limitations included in her doctor's notes would not allow her to do the essential functions listed in the job description. (Doc. No. 14 at 13). Plaintiff responds that she has plausibly alleged that she was a qualified individual. (Doc. No. 19 at 9).[18]

The statute states that:

> The term "qualified individual" means an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires. For the purposes of this subchapter, consideration shall be given to the employer's judgment as to what functions of a job are essential, and if an employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job.

42 U.S.C.A. § 12111(8); *see also E.E.O.C. v. Ford Motor Co.*, 782 F.3d 753, 761 (6th Cir. 2015).

The EEOC regulations provide further insight regarding what constitutes an "essential function":

> (1) In general. The term essential functions means the fundamental job duties of the employment position the individual with a disability holds or desires. The term "essential functions" does not include the marginal functions of the position.
>
> (2) A job function may be considered essential for any of several reasons, including but not limited to the following:
>
> > (i) The function may be essential because the reason the position exists is to perform that function;
> >
> > (ii) The function may be essential because of the limited number of employees available among whom the performance of that job function can be distributed; and/or
> >
> > (iii) The function may be highly specialized so that the incumbent in the position is hired for his or her expertise or ability to perform the particular function.
>
> (3) Evidence of whether a particular function is essential includes, but is not limited to:

---

[18] In the part of her Response purporting to rebut Defendant's claim that she is not *qualified*, Plaintiff focuses largely on explaining why she is *disabled*. (Doc. No. 19 at 9-11); (Doc. No. 20 at 4). But Defendant does not argue that Plaintiff is not disabled; instead, Defendant focuses its briefing on why Plaintiff is not qualified for a position. The Court therefore does not address Plaintiff's arguments regarding why she is disabled.

27

(i) The employer's judgment as to which functions are essential;

(ii) Written job descriptions prepared before advertising or interviewing applicants for the job;

(iii) The amount of time spent on the job performing the function;

(iv) The consequences of not requiring the incumbent to perform the function;

(v) The terms of a collective bargaining agreement;

(vi) The work experience of past incumbents in the job; and/or

(vii) The current work experience of incumbents in similar jobs.

29 C.F.R. § 1630.2(n).

Defendant cites the Court to no evidence to support Defendant's implication that a job description alone determines what constitutes an "essential function." Instead, Defendant merely drops a footnote which indicates that the word "shall" (as used in 42 U.S.C. § 12111(8)) means than an action is mandatory, a point the Court does not dispute. (Doc. No. 14 at 12). But the relevant use of the word "shall" in 42 U.S.C. § 12111(8) pertains only to the *consideration* of a job description *as evidence* of the job's essential functions; accordingly, consideration by the Court of a submitted job description is statutorily mandated, but that is *not* to say that the job description by itself is dispositive. While the Court does not deny that a job description may prove to be very (or even the most) compelling evidence of essential functions in a particular case, nothing in this statute suggests that the job description is the exclusive type of cognizable evidence of the job's essential functions.

In addition, the regulations are clear that a job description is one type of evidence that can be submitted (for mandatory consideration by the court), and that other evidence also can be submitted and considered. 29 C.F.R. § 1630.2(n). Likewise, the Sixth Circuit has clearly indicated repeatedly that a job description should not be taken as dispositive evidence of what the "essential functions" of a job are. *E.g.*, *Henschel v. Clare Cty. Rd. Comm'n*, 737 F.3d 1017, 1022–23 (6th

28

Cir. 2013) ("As the employer, [Defendant's] opinion that hauling is an essential function carries weight but is only one factor to be considered. A court also must conduct a fact-specific inquiry into both the employer's description of a job and how the job is actually performed in practice. (internal citation and quotation marks omitted)); *Hall v. U.S. Postal Serv.*, 857 F.2d 1073, 1079 (6th Cir. 1988) (reversing district court that accepted job description as controlling and explaining the required "highly *fact-specific*" inquiry and explaining that "[s]uch a determination should be based upon more than statements in a job description and should reflect the actual functioning and circumstances of the particular enterprise involved"); *Camp v. BI-LO, LLC*, 662 F. App'x 357, 364 (6th Cir. 2016) ("We do not 'require blind deference to the employer's stated judgment' that the ability to lift more than 35 pounds is an essential function when ruling on a motion for summary judgment. The record contains facts that might allow a reasonable jury to discount [Defendant's] reliance on the written job description as it relates to the necessity of the stock clerk lifting more than 35 pounds. In particular, [Plaintiff's] actual on-the-job experience, and that of his coworkers, including his immediate supervisor, provide evidence to rebut [Defendant's] contention that heavy lifting is in fact an "essential function" of the stock clerk job."). In fact, one of the cases cited to by Defendant states that: "Written job descriptions are . . . not dispositive." *Rorrer v. City of Stow*, 743 F.3d 1025, 1039 (6th Cir. 2014).

Defendant argues that Plaintiff was not a qualified individual because her lifting restrictions left her unable to meet the requirements of the job:

> Plaintiff's Complaint-incorporated job description required her to be able to "carry up to 75 lbs." The Complaint-incorporated functional capacity examination that Plaintiff underwent in January 2017 certified that Plaintiff was only able to "… occasionally lift up to 20 lbs.", with a 15 pound "[f]loor to [w]aist" lifting restriction. Plaintiff's physician certified trough [sic] the). Complaint-incorporated light duty return-to-work slip that Plaintiff was restricted to "… no lifting more than 20 pounds from floor to chest." Finally, Plaintiff's own physician-modified March

29

> 2017 return-to-work slip, as incorporated into the Complaint, confirmed that she could " . . . occasionally lift up to 20 pounds."

> Since Plaintiff's own Complaint pleads that she was not "qualified" under the ADAAA, she is not entitled to the statute's protections.

(Doc. No. 14 at 13).

In addition to being wrong about the allegedly dispositive nature of the job description, one thing to describe what occasionally is involved in a position, and it is another to specify that what is occasionally involved is *required*, *i.e.*, is an essential function.

The section of the job description entitled "functional requirements" certainly does sound a lot like "functional essentials" and thus, in turn, "essential functions." (Doc. No. 13-2 at 3). The Court grants that these could be taken to set forth "essential functions," including, as noted, the "occasional" task of carrying "wts > 25 lbs." (*Id.* at 4). Arguably, this part of the job description states unambiguously that occasionally lifting of 25 pounds is an essential function of the job requested by Plaintiff. But even if it does so state, the Court cannot say at this juncture that a jury would be *obligated* to conclude that this function (carrying) was truly essential and that there was no possibility that in reality (as opposed to "on paper"), Defendant would have deemed someone like Plaintiff[19] qualified because her weight restriction was somewhat lower than 25 pounds. That is, the job description by itself does not mean that Defendant actually required someone filling that position to lift more than 25 pounds or lift more than whatever Plaintiff could lift; a jury could find that this actually was not an essential function of the job. This is the precise lesson of case like *Camp*.

---

[19] That is, someone who could lift 15 pounds up to her waist and could occasionally lift up to 20 pounds (even if not necessarily all the way up to her waist).

Plaintiff had successfully worked in the Paint and Assembly department for many years, and she has alleged that she was qualified for a position in the brake assembly line and several other jobs. *See Lynn v. True N. Mgmt.*, LLC, No. 15-CV-2650, 2016 WL 6995290, at *3 (N.D. Ohio Nov. 30, 2016) ("The complaints state that Lynn was able to perform the 'essential functions' of the job. She had the skills required to complete the tasks of a cashier and customer service representative for nearly thirteen years prior to the decline in her health. Therefore, she was arguably 'qualified' for the position."). True, this allegation on its own may be deemed merely conclusory and thus, under *Iqbal*, not entitled to the presumption of truth for purposes of a motion to dismiss. But this allegation is supported by alleged factual matter that, although hardly copious, is at least minimally adequate. Defendant's arguments to the contrary rely on the job description, which the Court finds to have been misconstrued and not dispositive in any event.

Therefore, the Court finds that Plaintiff has adequately plead that she was a qualified individual. Defendant raises some arguments, and points to apparent facts, that may have their place later in this litigation, but none convince the Court that the Complaint does not survive the motion-to-dismiss phase.

## 2. Reasonable accommodation

Defendant argues that it is not required to create a new position for Plaintiff, and that since she was requesting a permanent light duty placement (which Defendant deems a "new" position), her request was *per se* unreasonable. (Doc. No. 14 at 14).

The statute indicates that a "reasonable accommodation" might include:

> job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities.

42 U.S.C. § 12111(9)(B).

Defendant argues that "[e]mployers covered by the ADAAA have no obligation to create altogether new positions of employment for protected 'disabled' individuals. More importantly, the ADAAA cannot, as a matter of law, compel an employer to create permanent light duty positions of employment under the accommodation prong of that federal statute." (Doc. No. 14 at 14 (internal citation omitted)). Defendant cites authority indicating that an employer has no obligation to create a new job or create a job that is permanently light duty. The Sixth Circuit has explained the distinction between an employer's duty to consider transferring an employee versus creating a new job for that employee:

> [A]n employer has a duty under the ADA to consider transferring a disabled employee who can no longer perform his old job even with accommodation to a new position within the Company for which that employee is otherwise qualified. Employers are not required to create new jobs, displace existing employees from their positions, or violate other employees' rights under a collective bargaining agreement or other non-discriminatory policy in order to accommodate a disabled individual.

*Burns v. Coca-Cola Enterprises, Inc.*, 222 F.3d 247, 257 (6th Cir. 2000). "[W]e have applied this rule to hold that an employer need not create a permanent light-duty position." *Meade v. AT&T Corp.*, 657 F. App'x 391, 396 (6th Cir. 2016); *see also Thompson v. Henderson*, 226 F. App'x 466, 474 (6th Cir. 2007) ("Defendant is simply not required to engage Lee in temporary light-duty assignment in perpetuity.").

As the Court has previously discussed, Plaintiff specifically informed Defendant of several jobs she was able to fully perform, and alternatively requested permanent light duty. Therefore, she was requesting a reassignment to a position which she could fully perform, and "reassignment to a vacant position" is specifically listed in 42 U.S.C. § 12111(9)(B) as a form of reasonable accommodation. The Court has already expressed (in connection with the limitations question) the

view that Plaintiff was requesting assignment to a position she could fully perform, or, in the alternative, a permanent light duty position. Defendant's only response to this is to claim that Plaintiff has not alleged that she was able to perform the essential functions of—and thus was not qualified for—the brake installation job, a claim the Court has already rejected for the reasons discussed herein. (Doc. No. 20 at 5).

The Court finds that Plaintiff has pled facts that make plausible the inference that she was denied a reasonable accommodation and was thereafter terminated. The Court therefore will not grant Defendant's Motion on this ground.

### E. Similarly situated employee

Taking a different tack in attacking Plaintiff's claim of a lack of reasonable accommodation under the ADAAA, Defendant argues that Plaintiff's allegation of a white employee being treated better than her is insufficient because she does not allege that the employee was permanently impaired, and that employers are not legally required to offer identical accommodations to different employees under the ADAAA. (Doc. No. 14 at 15). However, Plaintiff's Complaint appears to make this allegation in support not of her claim under the ADAAA, but of her race discrimination claims under Title VII and Section 1981. In Count II and Count III (asserting a race discrimination claim under Title VII and a race discrimination and retaliation claim under Section 1981, respectively), Plaintiff alleges: "Defendant allowed white employees to remain in one job function and not rotate functions, or be cross-trained for several jobs, but disproportionately did not allow black or minority employees this treatment. Defendant allowed white employees to return to work in a light duty capacity and/or be transferred to positions that fit their restrictions whereas it did not do that for similarly situated black employees." (Doc. No. 1 at ¶¶ 48, 49, 53, 54

(identical paragraphs included in each claim)). Neither of these paragraphs, nor anything like them, were included or incorporated in her ADAAA claim (Count I).

Therefore, it seems that Defendant has misconstrued Plaintiff's claim of race-based disparate treatment by calling it a "disparate treatment allegation under the ADAAA." (Doc. No. 14 at 15). It is true that Plaintiff's race discrimination claim is related to her ADAAA claim, in that Plaintiff claims that her race-based disparate treatment was reflected in Defendant's response to her request for accommodation due to her disability. But Plaintiff is claiming that she received this disparate treatment *because she was African American rather than white (or Caucasian, a term she used in her EEOC filing) not because she had a disability*. But even construing Defendant's attack as being directed against her race claim, and not against her ADAAA claim as to which it is simply inapplicable, the attack gets Defendant nowhere.

Plaintiff's burden of showing that another employee is similarly situated, to the extent that it exists at all at the motion to dismiss stage, is not a heavy one.[20] Courts in this Circuit, in assessing

---

[20] At the summary judgment stage, "the plaintiff must show that the 'comparables' are similarly situated in all respects." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992). "Thus, to be deemed 'similarly-situated', the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Id.*

Though the Court does not need to determine the applicable *prima facie* case at this stage (as Plaintiff might meet her *prima facie* case in various ways, including via direct evidence), the Court notes that the *prima facie* case often is stated as such:

> a plaintiff must show that 1) he is a member of a protected class; 2) he was qualified for his job and performed it satisfactorily; 3) despite his qualifications and performance, he suffered an adverse employment action; and 4) that he was replaced by a person outside the protected class or was treated less favorably than a similarly situated individual outside his protected class.

*Hughes v. Gen. Motors Corp.*, 212 F. App'x 497, 502 (6th Cir. 2007) (quoting *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 572–73 (6th Cir.2000)).

the adequacy of a plaintiff's complaint, have regularly found sufficient allegations that the plaintiff was treated less favorably than similarly situated coworkers coupled with allegations as to how the plaintiff was treated less favorably. *See e.g.*, *Guinn v. Mount Carmel Health*, No. 2:09-CV-226, 2012 WL 628519, at *9 (S.D. Ohio Feb. 27, 2012) ("[Plaintiff] specifically made allegations that he was treated less favorably than similarly situated coworkers . . . . Moreover, not only does [Plaintiff] allege that he was treated less favorably than his similarly situated white coworkers, he states specifically in what way he was treated less favorably."); *Campbell v. Korleski*, No. 2:10-CV-1129, 2011 WL 2748641, at *6 (S.D. Ohio July 14, 2011) ("[Plaintiff] has alleged that he was treated less favorably than his similarly situated white coworkers . . . . He avers that (unlike his similarly situated white coworkers) he was placed into positions where his opportunity for advancement was minimal. A reasonable inference can be drawn from [Plaintiff's] allegations in the amended complaint that he was denied promotions or not offered promotions that his white coworkers were given and/or offered."). One court has gone so far as to state that, under *Swierkiewicz*, a plaintiff's failure to specifically plead that she was treated less favorably than someone outside of her class did not merit dismissal. *Ndene v. Columbus Acad.*, No. 2:09-CV-892, 2010 WL 1031864, at *4 (S.D. Ohio Mar. 17, 2010); *see also Cummings v. Greater Cleveland Reg'l Transit Auth.*, 88 F. Supp. 3d 812, 818 (N.D. Ohio 2015) ("But determining whether employees are similarly situated is a fact-bound inquiry not proper for a motion to dismiss.").

Assuming that Plaintiff has to allege some facts showing she was similarly situated to a relevant comparator, Plaintiff has met this requirement. Plaintiff alleges in her Complaint that she was treated less favorably than a white employee. Allegedly, she was not allowed to remain in one job function without rotation, be returned to work in a light duty capacity, or be transferred to a position that fit her restrictions. (Doc. No. 1 at ¶¶ 48. 49). Plaintiff alleges that she knows of one

white employee who was returned to work with light duty restrictions and was transferred into the Paint and Assembly department even though she (the white employee) could perform only one of the positions in the department with an accommodation. (*Id.* at ¶ 25). Plaintiff also alleges that there were similarly situated white employees who were allowed to stay in one position without rotation. (*Id.* at ¶ 26). The Court finds these allegations in the Complaint to be sufficient to survive the Motion, especially given that the Motion addresses whether there is a similarly situated employee as if it pertained to Plaintiff's ADAAA claim (instead of her race-based claims) and cites no case law relevant to the Title VII and/or Section 1981 context.

Additionally, the Court notes that it would be inappropriate to dismiss Plaintiff's claim based on the purported failure to satisfy a standard that is inapplicable at the pleading stage and might never even apply in this case. The "similarly situated" standard is implicated only in the elements of a *prima facie* case under *McDonnell Douglas.* But the Court has not yet determined whether Plaintiff will be required establish a *prima facie* case later in this litigation under *McDonnell Douglas*, or whether instead the *McDonnell Douglas* framework will prove inapplicable due to Plaintiff's future presentation of direct evidence of discrimination. *Braun v. Ultimate Jetcharters, Inc.*, No. 5:12CV1635, 2013 WL 623495, at *8 (N.D. Ohio Feb. 19, 2013), *aff'd sub nom. Braun v. Ultimate Jetcharters*, LLC, 828 F.3d 501 (6th Cir. 2016) ("Plaintiff has thus alleged a viable gender discrimination claim and is not required, at this stage, to establish an inference of discrimination based on defendants' treatment of similarly situated male employees."). So even though the Court finds that Plaintiff's allegations adequately meet this standard, it finds alternatively that they do not have to. For each of these alternative reasons, therefore, Defendant's reliance on the "similarly situated" standard is to no avail on the instant Motion.

**CONCLUSION**

For the reasons discussed herein, the Court will deny the Motion to Dismiss.

An appropriate order will be entered.

_Eli Richardson_
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE